JL:TMM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**12 M 542**

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

PABLO BURGOS,
    also known as "Popo" and
DESERAE RICHARDSON,
    also known as "Deserae Burgos,"

           Defendants.

- - - - - - - - - - - - - - - - - -X

AFFIDAVIT IN SUPPORT OF
ARREST WARRANT

(21 U.S.C. § 846)

EASTERN DISTRICT OF NEW YORK, SS:

       ANTON C. KOHUT, being duly sworn, deposes and says that he is a Special Agent of the United States Department of Justice, Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

       Upon information and belief, on or about and between November 2008 and September 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants PABLO BURGOS, also known as "Popo," and DESERAE RICHARDSON, also known as "Deserae Burgos," together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a substance

containing oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

(Title 21, United States Code, Section 846.)

The source of your affiant's information and the grounds for his belief are as follows:[1]

1      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(c), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request an arrest warrant.  I have been an agent with DEA since 1998.  I have participated in hundreds of investigations of unlawful drug distribution and have conducted or participated in surveillance, undercover transactions, the execution of search warrants, debriefings of informants and reviews of taped conversations and drug records.  Through my training, education and experience, I have become familiar with the manner in which drugs are acquired, transported, stored and distributed, and the methods of payment for such drugs.

2.      I have personally participated in the investigation of the offenses discussed below.  I am familiar with the facts and circumstances of this investigation from: (a)

_____

[1]      Because this affidavit is submitted for the limited purpose of establishing probable cause for an arrest warrant, I have not set forth each and every fact learned during the course of the investigation.

my personal participation in this investigation, (b) reports made to me by other law enforcement authorities, (c) information obtained from confidential sources of information and cooperating witnesses and (d) prescription drug records received from the New York State Bureau of Narcotics Enforcement.

3.      Since 2010, DEA agents have been investigating a drug trafficking organization that obtains prescriptions for pharmaceutical controlled substances, including oxycodone, and then sells and distributes the oxycodone in the Eastern District of New York and elsewhere.

4.      During the course of the investigation, DEA received information from a pharmacist about fraudulent oxycodone prescriptions that individuals were attempting to fill at various pharmacies throughout Long Island.  Based on this information, DEA separately debriefed two confidential witness (hereinafter "CW1"[2] and "CW2,"[3] collectively "CWs") regarding the oxycodone prescriptions.  Information provided by the CWs has proven to be reliable and been independently corroborated by physical evidence.

---

[2] CW1 has pleaded guilty to conspiracy to distribute oxycodone and conspiracy to obtain oxycodone by fraud, pursuant to a cooperation agreement.

[3] CW2 has entered into a non-prosecution agreement with the government.

5.    In sum and substance, the CWs individually advised DEA agents that, during 2008 and 2009, the CWs were engaged in obtaining large quantities of oxycodone pills for defendants PABLOS BURGOS, also known as "Popo," and his live-in girlfriend, DESERAE RICHARDSON, also known as "Deserae Burgos," who were engaged in the distribution of oxycodone.

6.    The CWs further advised DEA agents, in sum and substance, that they were both recruited by defendants BURGOS and RICHARDSON in 2008.  During this meeting, BURGOS told the CWs how they could assist BURGOS and RICHARDSON to obtain oxycodone pills.   In sum and substance, defendant BURGOS told the CWs to provide him with the names and accompanying medical benefit information for individuals who could be used to obtain prescriptions for oxycodone.  Once BURGOS had that information, he would have prescriptions filled out containing the individuals' names and medical benefit information, upon which CW1 or CW2 would have the prescription filled at a local pharmacy.   Once a prescription for oxycodone was filled, the CWs would give the oxycodone pills to BURGOS.

7.    During that same meeting, defendant RICHARDSON told the CWs, in sum and substance, that she was also involved with obtaining prescriptions for oxycodone and had prescriptions filled in her own name and that of family members.

8.    CW2 advised DEA agents that, shortly after this meeting, his/her health insurance and name was used to fill prescriptions for oxycodone on behalf of defendants BURGOS and RICHARDSON.  CW2 further advised that he/she supplied the names of other individuals and their respective insurance information to CW1 who then passed that information to defendants BURGOS and RICHARDSON so that prescriptions for oxycodone pills could also be filled.

9.    During the course of this investigation, DEA agents obtained records from the New York State Bureau of Narcotics Enforcement regarding the number of fraudulent oxycodone prescriptions written in the name of CW2 and the names of the individuals CW2 had ultimately provided (hereinafter "Individual 1" and "Individual 2," respectively).  During the six month period between November 2008 and April 2009, six oxycodone prescriptions were filled each containing a quantity of 60 tablets of oxycodone.  These prescriptions are as follows:

| NYS Prescription Number | Prescription Name | Date Written | Number of Pills Prescribed | Mg per Pill |
|---|---|---|---|---|
| OK2BT938 | CW2 | 11/2/08 | 60 | 80 mg |
| OK2BTH76 | CW2 | 1/25/09 | 60 | 80 mg |
| OK2BTK32 | CW2 | 3/17/09 | 60 | 80 mg |
| OK2BTC04 | CW2 | 4/21/09 | 60 | 80 mg |
| OK2BTC18 | Individual 1 | 4/15/09 | 60 | 80 mg |
| OK2BTC03 | Individual 2 | 4/13/09 | 60 | 80 mg |

10. CW1 advised DEA agents that he/she also provided defendant BURGOS and RICHARDSON with the names and medical benefit information of two individuals (hereinafter "Individual 3" and "Individual 4," respectively). CW1 further advised DEA agents, in sum and substance, that he/she would drop off prescriptions for oxycodone at local pharmacies located within the Eastern District of New York and then pick up filled prescriptions at the behest of defendant BURGOS. CW1 would then deliver these oxycodone pills to defendant BURGOS, usually at the home of defendants BURGOS and RICHARDSON. During the course of this investigation, DEA agents obtained records from the New York State Bureau of Narcotics Enforcement regarding the number of fraudulent oxycodone prescriptions written in the names of Individual 3 and Individual 4, whose names and medical benefit information CW1 had provided to defendants BURGOS and RICHARDSON. During the six month period between November 2008 and April 2009, a total of six oxycodone prescriptions were filled in the names of Individual 3 and Individual 4, respectively, each containing a quantity of 60 tablets of oxycodone. These prescriptions are as follows:

| NYS Prescription Number | Prescription Name | Date Written | Number of Pills Prescribed | Mg per Pill |
|---|---|---|---|---|
| OK2BTH10 | Individual 3 | 11/11/08 | 60 | 80 mg |
| OK2BTM71 | Individual 3 | 1/25/09 | 60 | 80 mg |

| 0K2BTN61 | Individual 3 | 3/18/09  | 60 | 80 mg |
| 0K2BTC12 | Individual 3 | 4/24/09  | 60 | 80 mg |
| 0K2BTH09 | Individual 4 | 11/15/08 | 60 | 80 mg |
| 0K2BTM66 | Individual 4 | 1/25/09  | 60 | 80 mg |

All twelve of the prescriptions delineated above were written by

the same prescriber.

11.   CW1 further advised DEA agents, in sum and substance,

that on one occasion, he/she accompanied defendants BURGOS and

RICHARDSON, to the prescriber's office.  While CW1 waited in the

car with defendant RICHARDSON, defendant BURGOS went into the

prescriber's office.  After a few moments, defendant BURGOS

returned to the car with 20 to 30 prescriptions in his hand.

Defendant BURGOS provided CW1 with a few of the prescriptions

from that stack so that CW1 could have those prescriptions

filled for oxycodone.  CW1 further advised DEA agents, in sum

and substance, that on at least one occasion, he/she delivered

filled prescriptions of oxycodone pills to defendants BURGOS and

RICHARDSON in their car.

12.   During the course of the investigation, DEA agents

interviewed Individual 3 who advised agents, in sum and

substance, that he/she allowed CW1 to provide his/her name and

insurance information to defendant BURGOS for the purpose of

having prescriptions written for oxycodone.

13.   Based on my experience and training, during 2008 and
2009, one 80 mg pill of oxycodone had a retail street value of
approximately $80.

14.   On September 8, 2010, after conducting surveillance of
the residence of defendants BURGOS and RICHARDSON at 3 Southwood
Lane, Amityville, New York (hereinafter "the residence"), DEA
agents approached defendant BURGOS and asked permission to
search the residence.   Defendant BURGOS verbally consented and
signed a DEA Consent to Search form.   A subsequent search of
the residence resulted in the seizure of several items,
including a marijuana plant, a 12-gauge shot gun, 149 sham 80 mg
oxycodone pills, and at least 40 New York State prescriptions on
a prescription pad bearing the names of two physicians at a
hospital.   Approximately another five to seven prescriptions
from that New York State prescription pad were already partially
filled in with names for patients seeking oxycodone.   Among
these names, at least one individual is believed by the DEA
agents involved in this investigation to be a relative of
defendant RICHARDSON.

15.   The search of the residence also revealed a single
prescription from the office of the doctor who was the
prescriber of the prescriptions written in the names of CW2 and
Individuals 1 through 4 described above.   DEA agents also
recovered a document (hereinafter "the document") listing the

names of twenty individuals along with their addresses and dates

of birth.  Next to many of the names of these individuals are

the names and locations of pharmacies located within the Eastern

District of New York.  Some of the names listed on the document

are believe by the DEA agents to be relatives of defendant

RICHARDSON's family, as well as a few of the names that had been

provided to defendants BURGOS and RICHARDSON by CW1 and CW2.

16.    After DEA agents seized the New York State

prescriptions detailed above, defendant BURGOS made the

following consensual statements to DEA agents in the presence of

defendant RICHARDSON.  Defendant BURGOS stated, in sum and

substance, that he would receive prescriptions for oxycodone

from a supplier and then bring the prescriptions to local

pharmacies to have them filled.  Defendant BURGOS usually paid

cash for the pills.  Defendant BURGOS further stated, in sum and

substance, that he would then meet with his supplier and provide

his supplier with the oxycodone pills.  In return, the supplier

would pay defendant BURGOS between $800.00 to $1,000.00 for each

prescription filled.

17.    Subsequent to the search, DEA agents also interviewed

one of the physicians whose names were listed on the seized

prescription pad.  The physician informed DEA agents that a

prescription pad was stolen from his office in early 2010.  This

physician further advised DEA agents, in sum and substance, that

none of the names written on the missing prescription pad were his/her patients and that he/she does not prescribe oxycodone to patients.

WHEREFORE, your affiant requests that the Court issue an arrest warrant for the defendants PABLO BURGOS, also known as "Popo," and DESERAE RICHARDSON, also known as "Deserae Burgos," so that they may be dealt with according to law.

_____
ANTON C. KOHUT
Special Agent
DEA

Sworn to before me this
6th day of June 2012
_____